**PUBLIC SERVICE COMPANY, Own Risk, Petitioner,**

v.

**The STATE INDUSTRIAL COMMISSION of the State of Oklahoma, and Lucy Sims, Respondents.**

No. 38226.

Supreme Court of Oklahoma.

Oct. 7, 1958.

Doerner, Rinehart & Stuart, Tulsa, for petitioner.

J. I. Pitchford, Okmulgee, Mac Q. Williamson, Atty. Gen., for respondents.

WILLIAMS, Justice.

Lucy Sims, hereinafter called claimant, widow of Jasper Sims, filed a claim to recover under the Death Benefit Provision of the Workmen's Compensation Law, 85 O. S.1951, § 1 et seq. An award was made for the maximum amount of $13,500 to the

dependent widow and Public Service Company, own risk, hereinafter called petitioner has brought this proceeding to review the award.

The evidence discloses that Jasper Sims, hereinafter called employee, died March 29, 1957, following a heart attack on his way home from his work at the plant of petitioner. The principal question presented is that there is no competent evidence tending to support the finding that there was an accidental injury arising out of and in the course of the employment.

The record discloses that Jasper Sims was employed as cleanup man in demolition work on the premises occupied by petitioner. He had assisted in loading heavy pipe and material which was not his usual and ordinary work. He died on the way home in an automobile in which his son Vernon and three or four other employees were riding. The son testified that his father had been working with a dolly helping load heavy pieces of material and other witnesses supported this testimony.

It appears that Jasper Sims was 59 years of age and that he was a labor steward in his Union; that during the work-day he performed duties intermittently in that capacity; that his work for the company proper was in large part to assign other workers to demolition and clean-up work; but that on the day in question he was required to work with another workman loading pieces of metal in some instances weighing from three to four hundred pounds on a dolly; that Sims would hold a wheel of the dolly still with his foot while assisting in loading such heavy items from a strained position; that the two would then push the dolly which felt as if it had a thousand pounds on it.

Decedent rode with his son back and forth to work daily. The son, Vernon, had heard no complaints for weeks or months from the father that the latter felt bad or was sick; heard no such complaint on the morning of the day of his father's death; but did know at lunch that the father felt bad, had lunch with him, saw his father's face was "kind of drawn, kind of pale." He testified that his father told him at that time he had a pain in his chest. This testimony was stricken from the record. Vernon testified that about 4:30 p. m. the group left the plant, had gone about three miles, that the father "got stiff as if he had a cramp or something, and we stopped". "His whole body just became rigid. He just stretched out in the front seat." "* * * his eyes were walling." His pulse was "very weak". Mr. Sims died before the ambulance arrived.

Dr. J. testified by deposition, that if Sims strained himself unusually as stated in hypothetical question the effects of the strain (pain) would occur "when the heart was placed under the additional work load, or strain." Later, on cross-examination, the doctor testified, "Here again we get back to the question of the time element. Certainly, if he had had pain that came on while he was engaged in strenuous work, then certainly one must presume that that strain, or that additional workload that was placed on the heart was the basis for his pain and/or heart attack."

Dr. R. D. M. testified, by deposition, "I would think that it (the work counsel described) very likely did have a very important part in bringing it on at that particular time." "* * * in my opinion I would think that this unusually heavy work precipitated the attack at that particular time. * * *"

Dr. J. P. M., testifying by deposition and answering a hypothetical question, said, "There is a very good possibility that that (unusual nature of the work) is the cause of it." "In my opinion the physical—the unusual physical work precipitated the coronary occlusion." "In my opinion that would constitute a most unusual and heavy strain."

Petitioner argues that the question asked Doctor J. P. M. did not assume all of the facts relevant to the death or the cause thereof. The questions asked the doctor reviewed substantially the activities of the employee during the day. Also the attor-

ney for petitioner made suggestions in asking the questions which suggestions were approved and accepted by the attorney for the claimant with the exception of one suggestion, which related to how many times the employee visited other parts of the plant during the day. This question was apparently inspired by evidence that the employee had some duties to perform in placing men at their work. All the substantial facts were stated in the questions to the doctor and we find from an examination of the evidence that the substantial facts were assumed by the latter in giving his answers to the questions.

Petitioner cites Goodlett v. Williamston, 179 Okl. 238, 65 P.2d 472. Therein the trial court excluded the offer of a hypothetical question and on appeal to this court the action of the trial court was sustained in affirming the judgment. Petitioner also cites Turner v. Ford, 183 Okl. 567, 83 P.2d 844 and Skaggs v. Bennett Van & Storage, Inc., 204 Okl. 32, 226 P.2d 419. In Turner v. Ford, supra, no doctor testified that an accidental injury caused the disability of the employee. In Skaggs v. Bennett Van & Storage, Inc., supra, this court sustained the finding of the State Industrial Commission on a disputed question of fact. The cases are not in point.

Accidental injuries attributable to heart attacks have been considered by this court in Carden Mining & Milling Co. v. Yost, 193 Okl. 423, 144 P.2d 969; State Highway Department v. Powell, Okl., 258 P.2d 1189; Merrill v. State Industrial Commission, Okl., 290 P.2d 1095; Baker v. Harris, Okl., 302 P.2d 129; Reints v. Diehl, Okl., 303 P.2d 641; Butts v. Rose Drilling Co., Okl., 304 P.2d 986; Collins-Dietz-Morris Co. v. Richardson, Okl., 307 P.2d 159; and Chas. Banfield Co. v. State Industrial Commission, Okl., 309 P.2d 274.

In Carden Mining & Milling Co. v. Yost, supra [193 Okl. 423, 144 P.2d 971], we said:

"Disability attributable to a condition of the heart is compensable under the Workmen's Compensation Law in this jurisdiction if traceable to an accidental personal injury sustained in the course of and arising out of a hazardous employment covered by the act. Richards v. State Industrial Commission, 143 Okl. 29, 287 P. 69. Our holding in this respect is in accord with the view which obtains in most other jurisdictions. See annotations appearing in 19 A.L.R. 95, at page 110; 28 A.L.R. 204, at page 209; 60 A.L.R. 1299, at page 1314."

In State Highway Department v. Powell, supra [258 P.2d 1190], we said:

"Disability attributable to a condition of the heart is compensable under Workmen's Compensation Law in this jurisdiction if it originated in an accidental personal injury sustained in the course of hazardous employment covered by the act."

In Marby Const. Co. v. Mitchell, Okl., 288 P.2d 1108, 1109, it is stated:

"Whether the death of an injured employee is the result of an accidental injury is a question of fact, and, where there is competent medical evidence that death resulted from the accidental injury, this court will not disturb an award made by the State Industrial Commission based thereon."

In Calhoun Const. Co. v. Sexton, Okl., 288 P.2d 705, 706, it is stated:

"* * * If there is evidence of a strain and medical evidence that the strain caused the disability this is sufficient to support a finding that there has been an accidental injury even though the disability discloses its presence at a time not related to a specific physical effort. * * *"

Petitioner has cited several cases which do not involve proceedings before the State Industrial Commission. They are cited principally on the sufficiency of the evidence and as supporting the rules of court as to basing inference on inference. We have noted these cases and find it unnecessary to cite them or discuss them in detail.

588

What has been said above relating to the nature of the questions asked the doctor disposes of the argument in connection with the citation of these cases.

■ There is competent evidence reasonably tending to support the finding of the State Industrial Commission that the death was occasioned by an accidental injury arising out of and in the course of the employment.

DAVISON, HALLEY, JOHNSON, BLACKBIRD, JACKSON and CARLILE, JJ., concur.